# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| MARK ANDERSON, and<br>KILLER WHALE HOLDINGS, LLC,<br>a Minnesota limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>DAIRY FARMERS OF AMERICA, INC.,<br>a foreign corporation,<br><br>Defendant. | Civil Action No. 08CV4726<br>JRT/FLN<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

For their complaint against Defendant Dairy Farmers of America, Inc., Plaintiffs Mark Anderson and Killer Whale Holdings, LLC, collectively "Plaintiffs," by and through their attorneys, state and allege as follows:

## PARTIES

1. Plaintiff Mark Anderson is a citizen of Minnesota residing at 575 Oxford Road, Long Lake, Minnesota 55356.

2. Plaintiff Killer Whale Holdings, LLC is a Minnesota limited liability company with its principal place of business in Orono, MN.

3. Defendant Dairy Farmers of America, Inc. ("DFA"), is a foreign corporation with its principal place of business in Kansas City, Missouri. DFA was at all times relevant to the

SCANNED
JUL 18 2008
U.S. DISTRICT COURT/MPLS

allegations found herein doing business in the State of Minnesota and continues to do business in Minnesota.

## JURISDICTION AND VENUE

4. This action arises under the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 1, *et. seq.*

5. This Court has jurisdiction over this claim pursuant to the provisions of 28 U.S.C. § 1331 and 7 U.S.C. § 25.

6. The venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 and 7 U.S.C. § 25 as DFA transacts business in the State of Minnesota.

## FACTUAL ALLEGATIONS

7. Prior to 1997, bulk cheese was traded on the National Cheese Exchange ("NCE"). In 1997, the National Cheese Exchange was disbanded due to suspected price fixing and market manipulation. The spot cheese market was then transferred to the Chicago Mercantile Exchange ("CME") in the hopes that the market would be better regulated, and market manipulation would no longer be a concern. From 1997 to the present, cheese has been traded in the U.S. only on the CME.

8. Cheese producers in the U.S. typically use CME spot cheese market prices to set their sales prices. In turn, prices for fluid milk are set using a U.S. Department of Agriculture ("USDA") pricing formula whose primary commodity component is cheddar cheese prices. Futures contracts for fluid milk are also primarily determined by the price of cheese as set on the CME spot cheese market.

9. The CME spot cheese market is a market where a few large anonymous participants (primarily large companies and cooperatives in the cheese and dairy industry) buy

and sell cheese. Less than one percent of the cheese produced in the United States is traded on the market. The spot cheese market is known as a "thin market" because it handles only a fraction of all U.S. bulk cheese transactions yet it effectively sets the market price for the majority of cheese and milk sales across the nation. As such, even minor changes in supply and demand for bulk cheese can have a dramatic impact on the market price for cheese and consequently, fluid milk and milk futures.

10. Cheddar cheese is offered on the spot cheese market in the form of 500 pound barrels and 40 pound blocks and is traded in 40,000 – 44,000 pound quantities known as "carloads." The spot cheese market is typically open for just fifteen minutes daily and typically only a few transactions are completed each day. Milk futures are traded daily on the CME and cheese prices are likewise set daily.

11. DFA is the nation's largest producer-owned dairy marketing cooperative with more than 18,000 member-owners in forty-eight states. DFA focuses on producing and supplying dairy products. DFA products are sold in every state and exported internationally. DFA's Board of Directors is comprised of dairy farmers from states across the country. DFA markets and processes billions of pounds of milk and dairy products annually on behalf of its member-owners. Upon information and belief, DFA's member-owners marketed 69.1 billion pounds of milk in the year 2007, representing approximately 34% of the entire U.S. milk supply. DFA producers supply the largest amount of quality fluid milk to not just the U.S., but to the world.

12. One of DFA's core goals is to build opportunities that increase returns to its dairy farmer-members. DFA recorded $11.1 billion in sales in 2007. A significant portion of this revenue was paid back to DFA's member-owners.

13. Plaintiffs are short-sellers in various commodity futures, including fluid milk futures. In spring 2004, Plaintiffs short sold numerous futures contracts for fluid milk at the CME with the expectation, based upon usual market dynamics, that the price of milk futures would decrease over the term of the contracts given that cheese prices were significantly higher at the time of the short sales than they had previously been for a period of years.

14. At the time of Plaintiffs' short sales in 2004, the CME spot cheese market was a largely unregulated entity. The Commodity Futures Trading Commission did not oversee the cheese exchange because it was viewed as a cash market. No other federal agency was designated to regulate the cheese exchange. Any monitoring of the exchange was therefore left entirely to CME's staff of approximately 120 persons who were responsible for monitoring millions of trades each day.

15. In May and June 2004, during the term of Plaintiffs' short fluid milk futures contracts, DFA covertly purchased at least 19 million pounds of barrel cheese on the spot cheese market in an attempt to sustain the price of cheese and milk at a high level in order to further its own economic interests. 784 carloads of barrel cheese were purchased in the entirety of 2004 and DFA purchased 452 of these carloads, or 57.7%, during the months of May and June alone. The largest amount of carloads of barrel cheese sold in any other month in 2004 was 91. DFA purchased 100% of the carloads of barrel cheese sold on the exchange in May 2004 and 97.5% of the carloads of barrel cheese sold on the exchange in June 2004.

16. DFA had no legitimate business purpose for purchasing such large volumes of cheese in 2004 given that DFA is a producer, manufacturer, and seller of cheese and dairy products, focused on producing and marketing its own products.

4

17. Daily cheese prices on the spot market held unusually steady during the time of DFA's mass purchases in May and June 2004. There was a consistent rate of $1.77 per pound for barrel cheese and $1.80 per pound for block cheddar for almost an entire month – from May 24, 2004 through June 22, 2004. DFA members benefited from this artificially sustained increase in the market price of cheese from May through June 2004. By improperly supporting the price of cheese in this manner over May and June, DFA increased the profits paid to its members by millions of dollars.

18. DFA's actions in artificially sustaining the price of cheese at a rate above that expected under normal market conditions from May through June 2004 caused Plaintiffs' short futures contracts in fluid milk to decrease in value as the price of milk futures increased or remained steady based upon the falsely inflated cheese prices. This decrease in the value of the futures contracts triggered a margin call on Plaintiffs' milk futures accounts, resulting in the forced sale of a portion of Plaintiffs' milk futures beginning around June 8 and 9, 2004. This forced sale further devalued Plaintiffs' remaining milk futures contracts, causing the forced sale of more contracts. Plaintiffs sustained a combined loss of over $6 million from the forced sales of their milk futures contracts in June 2004.

19. Plaintiffs were unaware of DFA's actions with respect to the improper manipulation of the market in 2004 until recently. Plaintiffs only became aware of DFA's role in the manipulation of the cheese market when they were alerted recently to regulatory probes and investigations being conducted into DFA's role with respect to the bulk purchases in May and June 2004.

5

## **CLAIM FOR RELIEF**

### **COUNT ONE: VIOLATION OF § 9 OF THE CEA:
ILLEGAL PRICE MANIPULATION OF THE CHEESE MARKET**

20. Plaintiffs restate and reallege the above paragraphs as if fully set forth herein.

21. DFA, as the largest producer-owned dairy marketing cooperative in the U.S., held great influence in the cheese market in 2004.

22. DFA could, and did, affect market prices of cheese, milk, and milk futures via its actions in purchasing vast quantities of cheese on the cheese market from May through June 2004.

23. DFA intended to influence the cheese and milk market, including milk futures, by its actions in purchasing vast quantities of cheese on the cheese market from May through June 2004.

24. The price of cheese on the cheese market was artificially consistently high and steady from about May 24 through June 22, 2004 as a direct result of DFA's actions in purchasing the millions of pounds of cheese. Also as a direct result of DFA's actions, the price of milk futures was artificially high and steady.

25. Plaintiffs were unaware of DFA's actions at the time they were performed.

26. As a direct and proximate result of DFA's actions, Plaintiffs were damaged in an amount in excess of $ 6 million, the exact amount to be proven at trial.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendant DFA as follows:

A. That Plaintiffs' claims against Defendant DFA be sustained and that judgment be entered in favor of Plaintiffs with respect to each such claims;

B. That this Court ascertain and award Plaintiffs damages sufficient to compensate them for the losses sustained due to Defendant's actions;

C. That this Court enter an award in favor of Plaintiffs for its costs and reasonable attorneys' fees incurred in connection with this matter; and

D. That this Court grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial as to all issues so triable herein.

Respectfully submitted,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

BY: _____
Thomas B. Hatch (MN ID#150939)
Thomas C. Mahlum (MN ID#259391)
Rachel L. Osband (MN ID#0386945)

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Phone: (612) 349-8500

**ATTORNEYS FOR PLAINTIFFS**

7

# ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

RACHEL L. OSBAND
612-349-0845

July 17, 2008

<u>**VIA MESSENGER**</u>

U.S. Courthouse, Minneapolis Building
202 U.S. Courthouse
300 S. 4th Street
Minneapolis, MN 55415

Re: Mark Anderson, and Killer Whale Holdings, LLC vs. Dairy Farmers of America, Inc.
Our File No.: 124200.0002

Dear Court Clerk:

Enclosed herewith for filing, please find the following documents in the above-entitled matter:

1. Civil Cover Sheet;
2. Summons in a Civil Case;
3. Complaint Jury Trial Demanded; and
4. Fed. R. Civ. 7.1(a) Disclosure Statement.

Also enclosed is a check in the amount of $350.00 as and for the required filing fee. If you have any questions or concerns, please do not hesitate to contact me. Thank you.

Sincerely,

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

Rachel L. Osband

RLO/jlv
Enclosures

cc: Killer Whale Holdings, LLC